**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

The State, Respondent,

v.

Tommy Toomer, Appellant.

Appellate Case No. 2009-129146

———————————

Appeal From Horry County
Edward B. Cottingham, Circuit Court Judge

———————————

Unpublished Opinion No. 2012-UP-439
Heard June 6, 2012 – Filed July 18, 2012

———————————

**AFFIRMED**

———————————

Chief Appellate Defender Robert M. Dudek, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Senior Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General Brendan Jackson McDonald, all of Columbia, and Solicitor J. Gregory Hembree, of Conway, for Respondent.

———————————

**PER CURIAM:** Tommy Toomer appeals his murder conviction. The incident giving rise to the charge against him occurred at his residence. The two issues he raises on appeal concern the testimony of his housemate, Wanda Garrett, who appeared as a witness for the State. We affirm.

1. Toomer first argues the trial judge erred in admitting testimony from Garrett that on previous occasions he grabbed a heavy tree limb from a bedroom window and hit her with it. We hold Toomer failed to take adequate measures to preserve this issue for appeal. The record shows only that Toomer objected to the testimony under Rule 404(b), SCRE. The trial judge then held a bench conference that the jurors, though not excused from the courtroom, were unable to hear. The trial judge announced immediately after the bench conference that he permitted the disputed testimony; however, there is no explanation as to why the trial judge ruled as he did. In its respondent's brief, the State has suggested several grounds to support the admission of this statement, including (1) that it was probative of Toomer's intent, (2) that it demonstrated the absence of mistake or accident, and (3) that it was admissible pursuant to a *res gestae* theory. Without any information as to why the trial judge admitted Garrett's testimony about Toomer's alleged prior bad act, we cannot determine whether the ruling was in error. *See State v. Hutto*, 279 S.C. 131, 132, 303 S.E.2d 90, 91 (1983) (finding no error because the appellant did not meet his burden of presenting a record that was sufficiently complete for appellate review of the trial judge's actions); *In re Richard D*, 388 S.C. 95, 100, 693 S.E.2d 447, 450 (Ct. App. 2010) (acknowledging that an issue on appeal may have been discussed during an off-the-record bench conference but holding this court "cannot review issues not contained in the record").

2. Toomer also contends the trial judge erred in allowing the State to have a portion of a tape-recorded statement that Garrett gave to the police played during her redirect examination. Garrett gave the tape-recorded statement to the police a few days after the incident from which the charge against Toomer arose. In this statement, Garrett said that Toomer left their residence to purchase drugs shortly before he fatally injured the victim; however, she did not attest to this fact in either of two written statements she provided to law enforcement that same day. The question before us is whether the statement was admissible as a prior consistent statement under Rule 801(d), SCRE. We hold the trial judge properly allowed the jury to hear a portion of the tape.

Under Rule 801(d)(1)(B), SCRE, a prior statement is not hearsay if (1) the declarant testifies at trial and is subject to cross-examination concerning the

statement and (2) the statement is consistent with the declarant's testimony and is offered to rebut an express or implied charge against the declarant of recent fabrication or improper influence or motive, provided that the statement was made before the alleged fabrication or before the alleged improper influence or motive arose.

When cross-examining Garrett, Toomer asked her numerous questions that evidenced an attempt not only to discredit her veracity but also to suggest she altered her version of the events to include an assertion that he left their residence to purchase drugs before he killed the victim.  First, Toomer asked Garrett why he would have to leave the residence, which she described as a "crack house," to buy drugs.  When Garrett explained that the crack sold at the residence was adulterated with other substances, Toomer retorted, "You didn't tell the police that when you gave them a written statement on May 21st, did you?"  Toomer also attempted to impeach Garrett with one of her written statements, noting that in the statement she said only that "[Toomer] left for a while . . . and we didn't know where he went to" and then pointing out that "*today* you're telling this jury he left to buy crack." (emphasis added).  When cross-examining Garrett, Toomer further sought to emphasize the absence in her written statements of any mention that he left to purchase drugs by asking, "Suffice it to say you did not say in your written statement that Mr. Toomer went to get crack, did you?"   The trial judge's decision to allow the State to have a portion of Garrett's tape-recorded statement played was therefore amply supported by the record.  *See State v. Banda*, 371 S.C. 245, 251, 639 S.E.2d 36, 39 (2006) (stating an appellate court is bound by the trial judge's preliminary factual findings in determining the admissibility of certain evidence in criminal cases unless the findings are clearly erroneous).

**AFFIRMED.**

**WILLIAMS, THOMAS, and LOCKEMY, JJ., concur.**